IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

VAN LARIED SCOTT,

       Plaintiff,

vs.                                                                       CASE NO. 1:11-cv-80-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for disability insurance benefits and supplemental security income benefits. (Doc. 1.) The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 16 and 17.) For the reasons discussed below, the Commissioner's decision is due to be **REVERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits under Title II of the Social Security Act (the "Act") and supplemental security income benefits under Title XVI of the Act on July 23, 2007 alleging a disability beginning May 3, 2007. (R. 107-08.) Plaintiff's applications were denied initially and upon reconsideration. (R. 56-59, 64-73.) Plaintiff then filed a timely request for an administrative hearing and a video hearing was held before an Administrative Law Judge ("ALJ") on February 8, 2010. (R.

33-55, 75.) The ALJ issued a written decision dated March 5, 2010 denying Plaintiff's applications. (R. 16-28.) Plaintiff then appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on March 31, 2011. (R. 1-3.) Plaintiff then filed his Complaint in this case on April 27, 2011. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

#### A.     Personal Background

Plaintiff, born on December 13, 1958, was 51 years of age on February 8, 2010, the date of the administrative hearing.  (R. 39.)  He completed thirteen years of schooling.  (*Id*.)  Plaintiff has prior work experience as a self-employed handyman, a newspaper carrier, and a lawn service worker.   (R. 51.)

#### B.     Evidence Considered By the ALJ

The Plaintiff concentrates his arguments on the ALJ's treatment of Plaintiff's

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

#### A.     Personal Background

Plaintiff, born on December 13, 1958, was 51 years of age on February 8, 2010, the date of the administrative hearing.  (R. 39.)  He completed thirteen years of schooling.  (*Id*.)  Plaintiff has prior work experience as a self-employed handyman, a newspaper carrier, and a lawn service worker.   (R. 51.)

#### B.     Evidence Considered By the ALJ

The Plaintiff concentrates his arguments on the ALJ's treatment of Plaintiff's

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

mental impairments. Accordingly, the Court will focus its discussion of the record on the record evidence relating to Plaintiff's mental impairments.

Plaintiff received treatment at Meridian Behavioral Healthcare, Inc. ("Meridian") in Gainesville, Florida beginning on July 16, 2007 for complaints of depression and anxiety. (R. 192.) On August 2, 2007 Plaintiff complained he was sleeping quite a bit and had little desire to do much of anything. (R. 203-04.) On August 22, 2007 he reported his mood was a 3 out of 10 and Plaintiff was diagnosed with a major depressive disorder, dysthymic disorder, and chronic post traumatic stress disorder, and was assigned a GAF of 30.[21] (R. 196-99.)

On October 30, 2007 Plaintiff reported a depressed mood to Dr. Sarah Frazier, M.D., his treating psychiatrist at Meridian, while the progress note reflects Plaintiff's affect was euthymic. (R. 285-86.) On November 28, 2007, Plaintiff reported very poor energy and increased anxiety. (R. 283-84.)

On December 21, 2007, Dr. Lance Chodosh, M.D. performed a consultative physical examination of Plaintiff. (R. 264-76.) Dr. Chodosh opined Plaintiff suffered from (i) obesity; (ii) fatigue, lethargy and exertional dyspepsia, which he stated was probably multi-factorial and secondary to Plaintiff's obesity, depression, poor conditioning and sleep apnea; (iii) depression/psychological issues; (iv) hypertension;

---

[21] Global Assessment of Functioning, or GAF, is a measure of an individual's psychological, social and occupational functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994). Scores range from 0 to 100 and a score between 21 and 30 reflects the individual's behavior is considerably influenced by delusions or hallucinations or a serious impairment in communication or judgment or an inability to function in almost all areas, while a score between 31 and 40 reflects some impairment in reality testing or communication or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. Id. at 34. A score between 41 and 50 represents "serious" symptoms or any serious impairment in social occupational or school functioning; 51 to 60 represents moderate symptoms or moderate difficulties in social, occupational or school functioning. Id.

and (v) chronic low back pain and muscular cramping secondary to obesity. (R. 276.) Dr. Chodosh opined Plaintiff could stand and walk for 15 minutes at a time and for 3 hours out of 8 hours; stoop occasionally; cannot squat but can kneel; lift at least 40 pounds occasionally; and carry 15-20 pounds occasionally. (*Id.*)

Dr. Sarah Frazier completed a Treating Source Mental Health Report form dated December 26, 2007. (R. 279-80.) The form reflected Plaintiff suffered from difficulties maintaining his energy "but from [a] psychiatric perspective [he] may be able to work in some capacities." (R. 280.) When asked whether Plaintiff could sustain work activity for eight hours a day, five days a week, she opined Plaintiff might experience "possible difficulty" maintaining sustained attention for 40 hours per week. (*Id.*) The progress note for Plaintiff's December 26, 2007 visit to Dr. Frazier reflects his mood was depressed and his affect was mildly dysphoric. (R. 331-32.) On a January 29, 2008 visit to Dr. Frazier, Plaintiff's activities of daily living were good and his affect was euthymic. (R. 325-26.)

Dr. Linda Abeles, Ph.D., a consulting psychologist, completed a mental status examination of Plaintiff on February 8, 2008. (R. 301-03.) Dr. Abeles opined Plaintiff suffered from a depressive disorder as well as "Antisocial Personality Disorder Traits based on his history of approximately 90 arrests" and assigned Plaintiff a GAF of 50. (R. 303.) She further opined Plaintiff's "current level of psychological functioning would probably preclude him from obtaining or maintaining employment in that he would not appear to have the ability to cope with the stressors inherent in any position." (*Id.*)

Dr. Alan Harris, Ph.D., a non-examining consulting psychologist, completed a Psychiatric Review Technique form dated February 15, 2008. (R. 305-18.) Dr. Harris

7

opined Plaintiff had mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration. (R. 315.) Dr. Harris concluded Plaintiff should be able to cope mentally with a low stress job. (R. 317.)

On March 4, 2008, Plaintiff's affect was restricted and Plaintiff's progress was rated as a 3 out of 10 by Dr. Frazier. (R. 321-22.) On April 15, 2008, Dr. Frazier noted Plaintiff exhibited good activities of daily living and also noted Plaintiff was reporting fewer occasions when Plaintiff felt like "he doesn't care." (R. 319-20.)

Dr. Michael Zelenka, Ph.D., a consulting psychologist, completed a Psychiatric Review Technique form and Mental Residual Functional Capacity form, both of which are dated May 13, 2008. (R. 333-50.) Dr. Zelenka opined Plaintiff had mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and one or two episodes of decompensation of extended duration. (R. 347.) Dr. Zelenka opined Plaintiff may have some problems with motivation and concentration, which would affect Plaintiff's productivity, but concluded "with allowances, he retains adequate mental ability to carry out instr[uctions] and to relate adequately to others in a routine work setting." (R. 335.)

Dr. Frazier completed a second Treating Source Mental Health Report form, this one dated June 10, 2008. (R. 359-60.) She stated Plaintiff "has significant difficulty with excessive fatigue, anhedonia and depressed mood which negatively impact his ability to work." (R. 360.) When asked whether Plaintiff could sustain work activity for eight hours a day, five days a week, she concluded "No" and noted Plaintiff "is easily

8

sedated, is not able to maintain focus/energy for sustained periods." (*Id.*)

On a June 10, 2008 visit to Meridian, Plaintiff reported he felt "lost," but the progress note reflects he was very talkative and "wanted to talk about irrelevant topics," while Dr. Frazier reported his progress as a 4 out of 10. (R. 369-70, 402-03.) On August 5, 2008 Plaintiff reported a lack of motivation and trouble focusing and concentrating, and his GAF was rated as 55. (R. 367-68, 375-76, 400-01.) On December 18, 2008, Plaintiff reported feeling "flat," and his progress was rated as a 4 out of 10. (R. 397-98.) On March 9, 2009, Plaintiff reported being unable to focus longer than 10-20 minutes and his GAF was rated as a 50. (R. 373-74.)

On May 12, 2009, Plaintiff reported feeling very irritable and angry, while his affect was mildly irritable and his progress was rated as a 4 out of 10. (R. 390-91.) On July 28, 2009, Plaintiff presented with a depressed mood, a mildly anxious affect and his progress was rated as fair. (R. 363-64, 387-88.) On September 1, 2009 Plaintiff reported feeling more violent and angry and difficulties with focus, attention and concentration, and Dr. Frazier noted his mood appeared apathetic and anhedonic. (R. 362, 371-72, 385-86.) On November 2, 2009 Plaintiff's mood was depressed, his affect was euthymic, and his progress was rated as 5 out of 10. (R. 382-83.) On December 15, 2009, Plaintiff reported "trouble getting out of the house" and his affect was euthymic. (R. 380-81.)

### C.     Hearing Testimony

Plaintiff testified at his February 8, 2010 administrative hearing. He testified he had completed thirteen years of education and his last employment was as a self-

employed handyman in May 2007.  (R. 37, 40.)  He stopped working as a handyman when one day he experienced pain shooting down his spine, which prevented him from being able to walk farther than a block.  (R. 40.)  Prior to working as a handyman, he was a newspaper carrier.  (*Id.*)

As far as his medical issues, Plaintiff testified he experienced lower back pain from time to time and stated he has depression and sleep apnea.  (R. 41, 46-47.)  He testified his depression prevents him from getting out of bed about 27 days in a 31 day month.  (*Id.*)  He spends his days in bed surfing the Internet for 16-18 hours a day.  (R. 42.)  He only sleeps in periods of 30 minutes to an hour and also has issues maintaining his focus.  (R. 43.)  Plaintiff also testified he becomes agitated around other people.  (R. 44.)  Plaintiff testified he can stand and/or walk for about five to ten minutes at a time; sit for about 90 minutes at a time; and lift five to seven pounds. (R. 44-45.)  It takes him approximately two hours to shower because he can only stand for five to ten minutes at a time.  (R. 41-42.)

A Vocational Expert (VE") also testified at the February 8, 2010 administrative hearing.  The VE testified Plaintiff's past relevant work consisted of the positions of newspaper carrier, handyman, and lawn service worker.  (R. 51.)  The ALJ described a hypothetical individual with a 13th grade education, with Plaintiff's prior work experience, who can lift and carry 20 pounds occasionally and 10 pounds frequently; stand/and or walk for about two hours and sit for about six hours in an 8-hour workday; unlimited pushing and pulling restrictions; occasional functional limitations except the person could never climb ropes, ladders, ropes, and scaffolds; should avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dust, gases and poor

ventilation; and should avoid even moderate exposure to such hazards as dangerous machinery and unprotected heights. (R. 51-52.) The ALJ defined occasional as "a serious impairment in this area, but a person is still able to function satisfactorily." (R. 52.) When the ALJ asked the VE if the hypothetical individual could perform any of Plaintiff's past relevant work, the VE stated the hypothetical individual could not but the individual could perform the positions of surveillance system monitor, food checker and telephone solicitor. (R. 52.) The VE testified there were significant numbers of each of the three positions in both Florida and the national economy. (*Id.*)

The ALJ then further refined the occupational profile of the individual by stating the individual was moderately limited in his ability to maintain attention and concentration for extended periods, his ability to complete a normal workweek without interruptions from psychological based symptoms, and in his ability to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 53.) The ALJ defined "moderately limited" as having "a serious impairment in this area, but a person is still able to function satisfactorily." (*Id.*) The VE opined the individual could still perform the surveillance system monitor, food checker and telephone solicitor positions, even with these additional mental limitations. (*Id.*) The ALJ then asked if the hypothetical individual could still perform those three positions if the person were obese and weighed over 400 pounds. The VE testified the obesity would have no effect on the hypothetical individual's ability to perform the three positions. (*Id.*)

### D. The ALJ's Findings

In her written decision dated March 5, 2010, the ALJ concluded Plaintiff had not

engaged in substantial gainful activity since May 3, 2007, the alleged disability onset date. (R. 18.) She stated Plaintiff had the severe impairments of obesity, hypertension, obstructive sleep apnea and depression. (*Id.*) The ALJ further determined Plaintiff did not have an impairment or combination of impairments that met or equaled one of the Listings. (*Id.*) In support of this finding, the ALJ stated Plaintiff had mild restriction in his activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties with respect to concentration, persistence or pace. (R. 19.)

> The ALJ concluded Plaintiff had the RFC to perform light work except Plaintiff:
>
> can stand/and or walk about 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push and/or pull with no limitations; and never climb ropes and scaffolds. The claimant should avoid concentrated exposure to extreme cold, heat, fumes, odors, dusts, gases and poor ventilation; and should avoid even moderate exposure to dangerous machinery and unprotected heights. The claimant is moderately limited in his ability to maintain attention and concentration for extended periods; complete a normal workday and work-week without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods.

(R. 20.)

The ALJ then determined Plaintiff was incapable of performing any of his past relevant work. (R. 26.) The ALJ further determined, considering Plaintiff's age, education, work experience, and RFC, there are jobs which exist in the national economy Plaintiff can perform. (R. 27.) In support of this conclusion, the ALJ cited the VE's testimony that Plaintiff could perform the positions of surveillance system monitor, food checker and telephone solicitor, all of which are present in significant numbers in both the local economy and the national economy. (R. 28.) Accordingly, the ALJ concluded Plaintiff has not been under a disability from May 3, 2007, the alleged

disability onset date, through the date of the March 5, 2010 written decision. (*Id.*)

## IV. DISCUSSION

Plaintiff argues the ALJ committed two errors. First, Plaintiff contends the ALJ erred in failing to complete a Psychiatric Review Technique ("PRT") form or perform the analysis the PRT and its accompanying regulations require. Secondly, the Plaintiff contends the ALJ erred by asking the VE an improper hypothetical question. For the reasons discussed below the Court concludes that while the ALJ did not err as to the first issue the ALJ committed reversible error on the second issue with respect to one of the hypothetical questions posed to the VE.

### A.     The ALJ Performed the Analysis Required by the PRT and the Regulations Associated with the PRT

Plaintiff contends the ALJ erred by failing to complete a PRT or by failing to perform the analysis required by the PRT and its associated regulations. A review of the ALJ's decision discloses that the ALJ performed the analysis required by the PRT.

The Commissioner's regulations require an ALJ to use the "special technique" dictated by the PRT in evaluating mental impairments. 20 C.F.R. § 404.1520a(a). The special technique requires separate evaluations of how the claimant's mental impairment impacts the claimant in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3)-(4). The regulations require the ALJ to document the application of the PRT, to discuss the pertinent findings and conclusions based on application of the PRT, and to make specific findings as to the degree of limitation in each of the four functional areas in the written decision. *Id.* §

13

404.1520a(e)(4).  An ALJ's failure to complete a PRT, append a PRT to the written decision *or* incorporate the PRT's mode of analysis into the ALJ's findings and conclusions in the written decision warrants remand to the Commissioner.[22]

In the ALJ's written decision, the ALJ specifically discussed and concluded that Plaintiff has "mild restriction in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration." (R. 19.)  In support of this conclusion, the ALJ cited the opinions of consulting psychologists Dr. Abeles, Dr. Zelenka and Dr. Harris, the opinion expressed by Dr. Frazier, Plaintiff's treating psychiatrist, as well as the progress notes from Plaintiff's August 2008 visit to Dr. Frazier.  (*Id.*)

The ALJ's analysis was supported by substantial evidence.  In a PRT dated February 15, 2008, Dr. Alan Harris, Ph.D., a consulting psychologist, opined Plaintiff had mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace and no episodes of decompensation, each of extended duration.  (R. 315.)   In a PRT dated May 13, 2008, Dr. Michael Zelenka, Ph.D., a consulting psychologist, opined Plaintiff had mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and one or two episodes of decompensation of extended duration. (R. 347.)   Both opinions are consistent with the ALJ's conclusions with respect to the four areas of functioning in

---

[22] Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005).

14

20 C.F.R. § 404.1520a.

The ALJ's conclusion was also supported by the opinions of Plaintiff's treating psychiatrist, Dr. Sarah Frazier, and consulting psychologist Dr. Linda Abeles.  The progress notes from many of Plaintiff's visits to Meridian reflect Plaintiff was able to engage in activities of daily living.  (R. 286, 320, 322, 326, 332, 381, 383, 386, 388, 395, 398, 401, 403.)  The Treating Source Mental Health Report form Dr. Frazier completed on December 26, 2007 reflected Plaintiff's attention and concentration were intact and Plaintiff's grooming and hygiene were good.  (R. 279-80.)  The form Dr. Frazier completed on June 10, 2008 reflected Plaintiff's "concentration [was] fairly intact" and his grooming and hygiene were good, although it also contained the somewhat contradictory opinion that Plaintiff "is not able to maintain focus/energy for sustained periods."  (R. 359-60.)  Consulting psychologist Dr. Abeles also noted in her report Plaintiff "is able to take care of his daily personal needs."  (R. 302.)

Although the ALJ did not fill out a PRT form herself – which she is not required to do –  the ALJ nevertheless performed the analysis required under the Commissioner's regulations and discussed and relied upon the PRT's prepared by the medical professionals in this case.  Accordingly, the ALJ did not err in failing to complete a PRT or failing to perform the analysis required by the PRT and the associated regulations.

### B. One of The ALJ's Hypothetical Failed to Properly Present to the VE The Mental Impairments In Plaintiff's RFC

Plaintiff also contends the ALJ erred by posing an improper hypothetical question to the VE.  Specifically, Plaintiff points to the second hypothetical posed to the VE in which the ALJ included the following limitation and qualification regarding Plaintiff's non-

exertional mental impairments:

> [Assume the claimant is further restricted because] "his ability to maintain attention and concentration for extended periods is moderately limited, as well as the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. 53.)

Although there is no issue with this part of the hypothetical the ALJ went on to include in the hypothetical a definition of "moderately limited." The ALJ instructed the VE to assume "moderately limited is defined as a serious impairment in this area, but a person is still able to function satisfactorily." *Id.* Relying upon this second hypothetical the VE testified that the individual could still perform the jobs of surveillance system monitor, food checker and telephone solicitor positions. *Id.* The ALJ then asked if the hypothetical individual could still perform those three positions if the person were obese and weighed over 400 pounds, which the VE testified would have no effect on the hypothetical individual's ability to perform any of the three positions. *Id.*

In finding Plaintiff's RFC the ALJ expressly included the limitation that " the claimant is moderately limited in his ability to maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. 20.) The ALJ appropriately included this limitation in the second hypothetical posed to the VE. The problem is that nothing in the Commissioner's own regulations defines moderately limited. The Commissioner concedes this point in his brief.

The fact that there is no definition in the regulations of the term "moderately limited" does not end the analysis, however, and does not mean that the ALJ committed

16

error in posing the second hypothetical to the VE. To be sure the Social Security Administration's regulations do not obligate an ALJ to use specific wording when describing Plaintiff's impairments in these hypotheticals so long as the question accurately reflects the claimant's RFC. However, in order for a response to a hypothetical question by a VE to constitute substantial evidence of work available to the claimant (at Step Five), the question must set out all of the claimant's impairments.[23]

      Here, by including a definition, which on its face appears to conflict with the RFC finding that the Plaintiff has some mental limitation – albeit it a "moderate" limitation in his ability to complete a normal workday or workweek, without interruptions from the symptoms from his mental impairments and to perform consistently without an unreasonable number and length of rest breaks – the hypothetical at worst inaccurately presented the Plaintiff's RFC and at best was confusing as to the limitation the VE was to assume. The hypothetical is defective because it is susceptible to a number of different interpretations – none of which were clarified on the record at the hearing. For example, the VE reasonably could have assumed that the ALJ meant the Plaintiff was fully able to function satisfactorily in performing the actual functions of the job but could not do so for an extended period of time without being interrupted by his mental issues and without having to take a number of breaks for an unspecified period of time. Alternatively, the VE reasonably could have interpreted the hypothetical to mean that even though the Plaintiff experienced some interruptions as a result of his mental issues he, nonetheless, could satisfactorily perform the job. This latter interpretation would

---

[23] Wilson v. Barnhart, 284 F3d.1219, 1227 (11th Cir. 2002).

mean that even though Plaintiff had limitations from his mental impairments the limitations did not effect his ability to work. The point is that the Court cannot determine from this record the meaning the ALJ intended from the hypothetical and any attempt to discern the meaning the VE gave to the hypothetical would be pure speculation. Consequently, because there is a material question as to what the ALJ intended to include (and exclude) in his hypothetical there remains an issue as to whether the VE's response to the hypothetical question is sufficient to constitute substantial evidence to meet the Commissioner's burden at step five of the sequential analysis.

Accordingly, for this reason this case should be remanded to the Commissioner so that the ALJ can conduct a new hearing and pose a proper hypothetical question to the VE, which accurately and unambiguously specifies the mental non-exertional limitations of the Plaintiff so that the VE will be able to provide an opinion – based upon an accurate description of Plaintiff RFC – as to whether the Plaintiff can perform other work which exists in significant numbers in the national economy.

## V. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **REVERSED AND REMANDED** to the Commissioner under Sentence Four of 42 U.S.C. § 405(g) with instructions to the Commissioner to conduct a further hearing so that the ALJ can pose a hypothetical question to the VE, which accurately and unambiguously includes Plaintiff's non-exertional functional limitations in his ability to maintain concentration, persistence and pace.

**IN CHAMBERS** in Gainesville, Florida, on May 18, 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**